IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DAVID FIELD ABBOTT, | ) CIVIL ACTION No.: 4:10-CV-2253-TER |
|         Plaintiff, | ) |
| v. | ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ORDER |
|         Defendant. | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

## PROCEDURAL HISTORY

The Plaintiff, David Field Abbott, filed an application for DIB and SSI on October 12, 2005, alleging inability to work since September 1, 1997. His application was denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was held on October

8, 2008, at which time the Plaintiff and his non-attorney representative were present. The Plaintiff and a Vocational Expert (VE) both appeared and testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on November 13, 2008, finding Plaintiff was not disabled within the meaning of the Act. (Tr.17-38). In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant did not engage in substantial gainful activity from September 1, 1997, the alleged onset date, through the date of this decision, with the exception of periods of employment in 2001 and 2003 (20 CFR 404.1571 *et seq.* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: depression, anxiety and Dandy-Walker syndrome (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404.1525, 404.1526, 416.925 and 416.926.

5. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to sit, stand, and walk for a total of six hours each in an eight-hour workday, to frequently lift and carry 10 pounds and occasionally 20 pounds, to frequently bend and stoop, and to perform work involving routine and repetitive functions with no more than occasional contact with the public and not requiring exposure to hazardous environments.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 15, 1956, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant is now 51 years old, which is defined as a person closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404,1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 1997 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-38).

On June 24, 2010, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). After the Appeals Council denied his request for review, Plaintiff filed his complaint in this action on August 27. 2010.

## **ANALYSIS**

In his brief, Plaintiff argues as follows:

> The ALJ:
>
> (1) Performed an improper listing analysis;
>
> (2) Improperly disregarded treating source opinions; and
>
> (3) Failed to account for all documented limitations in his RFC determination.

(Plaintiff's brief).

The Commissioner contends that the ALJ did not commit these errors and that substantial evidence supports the determination that Plaintiff was not disabled.

Under the Act, 42 U.S.C. Section 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent her from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the Plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

**DISCUSSION**

Plaintiff argues that the ALJ's decision should be reversed or remanded as it is not supported by substantial evidence. First, Plaintiff argues that the ALJ failed to conduct a proper analysis with regard to whether or not he met a listing. Specifically, Plaintiff argues the ALJ failed to perform a proper listing analysis in regards to his "well-documented history of pseudo-seizures related to Dandy-Walker syndrome. Listing 11.03 addresses epilepsy, the most closely related to Mr. Abbott's impairment." (Plaintiff's brief, p. 10). Plaintiff argues that his symptoms are equal in severity and duration to the requirements of closely related Listing 11.03 as "several medical source opinions confirm episodes up to three times per week lasting 30 minutes to four hours." Plaintiff further asserts that despite the ALJ's finding that there was no medical evidence of treatment for injuries associated with his disorder, EMS notes from October 12, 2005, describe such an episode. (Tr. 252). Plaintiff argues that he met his burden and the ALJ gave no rationale for rejecting the references by treating sources by summarily concluding that he did not satisfy the criteria of any of the listings.

Defendant responds that the ALJ reasonably found that Plaintiff's impairments did not equal the requirements of any section of the Listings. Defendant contends the ALJ considered Section 11.00

of the Listings in finding that Plaintiff's Dandy-Walker syndrome did not equal any section of the Listings.

Listing 11.03 reads as follows:

> Epilepsy- nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 404 Subpt P, App. 1 § 11.03.

A claimant's impairment meets a Listing if "it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404 .1525(c)(3). The impairment medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." Id. § 404.1526(a). If a claimant has a listed impairment, but: 1) does "not exhibit one or more of the findings specified in the particular listing, or" 2) exhibits "all of the findings, but one or more of the findings is not as severe as specified in the listing," the claimant's impairment is medically equivalent to the listing if the claimant has "other findings related to [his or her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1).

The court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his or her rationale. Durham v. Apfel, 225 F.3d 653 (Table), 2000 WL 1033060, at *3 (4th Cir. July 27, 2000) (*citing* Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir.1998)). The Fourth Circuit has stated that "[j]udicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." Wyatt v. Bowen,

6

887 F.2d 1082 (Table), 1989 WL 117940, at *4 (4th Cir.1989) (*quoting* DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir.1983)).

With regard to Listing 11.03, which deals with epilepsy, the ALJ summarily stated, "[t]here is no medical listing specifically for Dandy-Walker syndrome, and the signs and symptoms Mr. Abbott has experienced do not satisfy the criteria of any of the listings in section 11.00 (neurological system). However, the ALJ did not explain the requirements of Listing 11.03 or any other listing within section 11.00 or detail his rationale for why Plaintiff's impairments did not meet or medically equal Listing 11.03.[1] The ALJ's conclusion that Plaintiff's impairments did not meet or medically equal the listing requirements of 11.03 is inadequately explained. Accordingly, it is not possible for the Court to conduct a proper review of the record to determine if there was substantial evidence to support the unfavorable decision without a proper analysis with regard to Listing 11.03. Therefore, this case is remanded for a proper determination of whether Plaintiff has an impairment that is of medically equal severity to Listing 11.03.

**Treating Source Opinion**

Plaintiff argues the ALJ improperly disregarded medical evidence. Plaintiff asserts the ALJ disregarded the opinion of Dr. Jeanine Grier stating there were no treatment recordsalthough her signature appeared on medical records "dated May 2005 and elsewhere." (Plaintiff's brief, p. 11). Plaintiff asserts that the ALJ improperly rejected the opinion of Dr. Knepper without first determining

---

[1] In a statement dated January 19, 2009, Dr. Jonathon Halford opined that Plaintiff meets the criteria of Listing 11.03. Dr. Halford further stated that "Dandy-Walker is the medical equivalent of nonconvulsive epilepsy. The seizures are unpredictable and frequent. They can last longer than epileptic seizures." (Tr. 644).

whether additional treatment notes from his practice were available before discounting it based on the fact that the opinion was unaccompanied by treatment notes. Further, Plaintiff argues that:

> The ALJ also chose not to accept Dr. Halford's opinion, noting that it was not accompanied by treatment records. However, Dr. Halford is a staff neurologist at the VAMC and voluminous records exist from that facility. It cannot be said that the ALJ's decision rests on substantial evidence where he failed to fully develop the record and overlooked evidence altogether. Because the ALJ failed to fully develop areas of concern with the record, it cannot be said that his opinion rests on substantial evidence and thus the Plaintiff respectfully requests that it be reversed.

(Plaintiff's brief, p. 11-12).

Defendant asserts the ALJ reasonably gave little weight to the opinions of Plaintiff's treating physicians and found he had the Residual Functional Capacity (RFC) to perform a reduced range of light work. Defendant argues that:

> Dr. Grier wrote that Plaintiff was unable to maintain employment, drive, or function at his previous level of functioning (tr. 279). Dr. Knepper reported in June 2004 that Plaintiff's impairments adversely affected his ability to perform his activities of daily living and from engaging in active employment (Tr. 289); Dr. Wagner opined in October 2005 Plaintiff could not maintain competitive employment and live independently (Tr. 250); Ms. Oglesby and Dr. Brown opined in October 2008 that Plaintiff could not be employed and should be considered 100% disabled (Tr. 637). Citing good reasons, the ALJ disregarded the opinions of Plaintiff's treating sources (Tr. 35-36). Plaintiff only challenges the ALJ's treatment of the opinions of Dr. Grier, Dr. Knepper, and Dr. Halford.

(Defendant's brief, p. 19).

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996) (holding that although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence

exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir.1983) (holding a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). Specifically, pursuant to 20 C.F.R. § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying the following five factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 30 C.F.R. 404.1527(d)(2) (i-ii) and (d)(3)-(5).

Furthermore, Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir.1974).

The ALJ concluded the following with regard to the evidence and opinions of Drs. Grier, Knepper, and Halford:

> As for opinion evidence, a statement dated May 20, 2004, by Jeanne Grier, M.D. of MUSC Neurology Department, reveals that she took over the claimant's neurological care in the beginning of 2004. She reported claimant had a myriad of episodes and symptoms, which could potentially represent temporal lobe seizures or other variant of complex partial seizures. She further reported she was in support of disability of the claimant since in his state at the time he was unable to maintain employment, to drive, or to function at his previous level of functioning. (Exhibit 7F, pg. 7). The undersigned gives little weight to Dr. Grier's opinions, as it was not accompanied by any treatment records.
>
> A statement dated June 25, 2004, by John Knepper, D.O., of Sewee Family Medicine, indicates he saw the claimant on a clinical basis. Dr. Knepper reported that the impact of claimant's perplexing medical ailments had severely and adversely affected the claimant's ability to perform his activities of daily living, as well as, precluding him from engaging in active employment. The undersigned gives little weight to Dr. Knepper's opinion, as it was not accompanied by any treatment records.

(Tr. 35).

As to Dr. Halford's opinion, the ALJ concluded as follows:

> A statement by Jonathan Halford, M.D., VAMC Staff Neurologist, in October 2008 indicated he had treated the claimant sin[c]e July 19, 2007. He reported claimant had intermittent ataxia which was most likely caused by a cerebral malformation most consistent with Dandy-Walker which probably caused intermittent increased intracranial pressure. He further reported claimant had at least three spells per week during which he was very ataxic, could not walk, and was nauseated. He indicated that each of these spells lasted from 30 minutes to four hours. He further indicated that this was a very disabling condition for the claimant. It was his opinion that the claimant could not be employed and that he should be considered 100% disabled due to this condition (Exhibit 20F). The undersigned gives little weight to Dr. Halford's opinion because it was not accompanied by his treatment records.

(Tr. 36).

A finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight. In this case, the ALJ noted that he was giving "little weight" to the opinions of the VAMC Staff Neurologist, Dr. Jonathan Halford, (Tr. 637), the statement of Dr. Jeanne Grier of the MUSC Neurology Department, and the statement of John Knepper, D.O. of Sewee

Family Medicine finding their opinions were not accompanied by treatment records.[2]  However, the ALJ did not explain what weight he gave their medical opinions that Plaintiff is unable to perform gainful activity. [3]  While the ALJ stated he was giving their opinions "little" weight he did not comply with the proper analysis under SSR 96-2p by failing to explain what weight he was giving their opinions and did not specify what contradictory evidence on which he was relying. Moreover, the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5. In this case, the ALJ's decision was not sufficiently clear as to what weight was given to the opinions of Drs. Grier, Knepper and Halford.  Even if this court could infer that "less weight" means some weight less than "controlling," it is still not sufficiently clear from the ALJ's report what weight, if any, was accorded to these treating sources opinions.[4]  Without knowing

---

[2] In Dr. Grier's statement of May 20, 2004, Dr. Grier asserted that she took over the care of Plaintiff in the MUSC Neurology Resident's Clinic in the beginning of 2004. (Tr. 279). Further, her signature appears on a "follow-up patient" consult note dated May 7, 2004, and her name was noted as being the provider for blood work that was ordered at MUSC. (Tr. 237, 281).  It also appears, *albeit* just the top portion of letters are legible, that her name appears at the bottom of the radiology report as the doctor for the MRI of the brain that was ordered in February 2004. (Tr. 280). Dr. Halford was Plaintiff's treating neurologist at VAMC of which numerous records were submitted from VAMC. There is no indication that the ALJ asked Plaintiff or his non-attorney representative if other medical or treatment notes existed from these three treating physicians who submitted opinions with regard to his ability to perform work.

[3] Further, the ALJ also stated that he was giving little weight to the opinion of Dr. Wagner of October 2005 that Plaintiff was unable to maintain competitive employment and live independently finding it was based on subjective history, and Dr. Pritchett's November 2005 statement that not being able to drive due to neurological concerns added to Plaintiff's disability finding it was inconsistent with the treatment records. However, it appears Dr. Wagner's and Dr. Pritchett's opinions further supported the opinions of Drs. Halford, Grier, and Knepper.  However, Plaintiff did not make any argument with regard to the ALJ not giving weight to the opinions of Dr. Wagner and/or Dr. Pritchett.

[4] "The ALJ's statement [of] 'less weight' could mean any of the following: the accorded weight was less than controlling, but greater than the weight given to other physician's opinions;

specifically the weight accorded to the opinions of Drs. Grier, Knepper, and Halford, this court is unable to properly apply the substantial evidence test to the ALJ's decision to discredit, or possibly disregard entirely, their opinions that Plaintiff was unable to work. Therefore, this matter is remanded so that the ALJ can make sufficiently clear what weight is given to Drs. Grier, Knepper and Halford's opinions, and upon remand, the ALJ should evaluate their opinions in accordance with all of the factors provided in 20 C.F.R. § 416.927.[5]

The requirement that an ALJ must give specific reasons for discounting a treating physician's testimony is well-established. The Agency has ruled that "the notice of the determination or decision . . . must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p. Based on the above, it is not possible for the Court to conduct a proper review of the record to determine if there was substantial evidence to support the unfavorable decision without a proper analysis with regard to the treating physicians' opinions and of Listing 11.03. Furthermore, the undersigned cannot address the remaining issue until the ALJ conducts a proper analysis of the treating physicians' opinions with regard to Plaintiff's physical and mental limitations. Once the ALJ conducts a proper analysis with respect to the treating physicians' opinions, he should conduct a proper listing analysis and reassess Plaintiff's Residual Functional Capacity for a proper review.

---

the accorded weight was less than that given to the other physician's opinions; or the opinion was given no weight whatsoever." Tench v. Commissioner of Social Security Administration, 2011 WL 3794080, n. 1 (D.S.C. 2011).

[5] When presented with a *pro se* claimant, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Marsh v. Harris, 632 F.2d 296, 299 (4th Cir.1980) (internal quotation marks and citations omitted). However, as previously stated, Plaintiff in this case was represented before the ALJ, *albeit* by a non-attorney representative. Therefore, the heightened duty that the ALJ should develop the record does not exist in this case. The ALJ should have given the Plaintiff the opportunity to supplement the record with the office notes/ records of these physicians.

**CONCLUSION**

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, speculate on the barren record presented. Accordingly, IT IS ORDERED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

AND IT IS SO ORDERED.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

March 8, 2012  
Florence, South Carolina